Mayor, please report. I'm Maximillian Sprinkle. I represent Kimberly Mensie, the appellant in this matter. I'll start by reading part of the judge's order dismissing the case. The judge said, the plaintiff points to racist cold words used at one of the public hearings regarding the plaintiff's zoning application. Worries by residential neighbors that a business in their neighborhood may increase crime and decrease their property values are legitimate concerns which do not necessarily relate to race at all. That sentence really captures the error in this decision. The judge gets at the core of the case about whether or not suggesting that the plaintiff's business would increase crime in the area or would decrease property values, questioning whether or not those concerns are based in some type of assumptions about African American people. And the judge here says that they don't necessarily, but they might. And that makes it a question of fact that should have prevented some re-judgment in this case. This case is about Kimberly Mensie, moved into a neighborhood that was white, she's African American, and she wanted to open, operate a nail shop out of her house that was called Nails by Kimmy. Residents, there's evidence in the record that residents harassed her, some of her neighbors harassed her about her moving in there and about her opening that business. And at a public hearing, residents expressed this, they didn't want it to happen. And one of the residents specifically referred to an increase in crime and a decrease in property values with no reason for believing that would happen, maybe aside from the fact that the business is called Nails by Kimmy. So the city in this case decided against re-zoning her property from residential to a mixed use zoning. There were other properties in the neighborhood and around the city that had been re-zoned to allow someone to operate a home business out of them. She didn't. They ostensibly say that it's because there is a plan for that neighborhood to not decrease the residential units. Now, it would not cause a net decrease in residential because it's mixed use. She still uses it as a residence and as a business. So one, it would not violate that plan. But two, one of the people who voted on the measure, Ms. Hurst, admitted that part of her calculus was the comments by the neighbors that it would increase crime in the area. And that makes it improper. That makes the decision arbitrary. The decision does not have to be wholly based on race. It just has to be part of the considerations. Well, why would a concern about crime be arbitrary? Well, there's no reason to believe that her operating the business out of her house would increase crime, especially because there literally is a beauty salon operated in the same neighborhood. So it's even a similar type of business. So there's just no reason to believe that. There were no statistics produced. There was no study produced that would show. Okay. So you're saying there's no, I don't know if you want to call it evidentiary basis, but there was no factual basis for the concern about crime. Right. There's no basis for the concern about crime except the neighbor's assumptions. And all the information the neighbors had was that it was an African-American neighbor who was trying to open a nail salon. And that is it. Therefore, as the judge noted, maybe it's not race-based, but maybe it is. And therefore it's a question of fact for a jury to decide that, especially in the context where she was harassed by neighbors specifically because of race. And in fact, she alleges that she had some stress issues that she actually sought medical treatment for because of the severity of some of the treatment she was even threatened. Her life was threatened at one point, even by a neighbor. I'd like to focus on the city though, because the city is really the issue. What evidence can you point to in the record that similarly situated persons were treated differently with respect to this? Yes. In response to the motion for summary judgment, Ms. Mincy provided a whole list of businesses around the city that had been rezoned. And lots of them had been rezoned to similar types of uses. In her neighborhood, there was, again, a beauty salon, which is an extremely similar use. Now, I believe that the city argues that there may not be a temporal relation in some of those, that maybe some of them happened in a different time period than her request happened. However, she still would be similarly situated. The time period is not so remote that it destroys her situation. Also, the city, well, I don't know that it's in the record, but the city does somewhat regularly allow uses to be changed for similar types of businesses. So that list of several businesses was her showing that there were similarly situated businesses. A variance? I'm sorry? Would that be a variance? You're saying that they grant variances? Yes, yes, yes. And that's what she was requesting, was a variance. Hers was zoned residential for a single family residence, and she was asking for a variance for it to be mixed use. Initially, when she asked, they put a set of requirements. They suggested that it be declined, and they put a set of requirements. She submitted the application again, and they still suggested that, recommended that the application be denied. Well, now, as to your list, Judge Moody said there wasn't any evidence to show that any of them had been rezoned in the same way that your client was trying to rezone, and therefore they weren't similarly situated. Is that correct? Well, I'm not sure what in the same way means, but . . . I don't know that that's correct. There are certainly some that were rezoned from . . . that were in neighborhood single family settings that were zoned to allow similar types of businesses. Did you prove that? I mean, did your list show that some of these other properties had been rezoned from single family zoning to mixed use or business or whatever it is that you need for her business? Yes. I can't say 100% what the initial zoning on all of those were. Well, I think that's part of the problem is you've got to . . . if you're going to show a comparator, you've got to identify for the court which one was similar. Yes. So, they are similar. All right. Well . . . They are similar because they are houses that are in a residential neighborhood that were then allowed to turn to business uses. So, even if the initial zoning was somewhat different, which I'm not sure that it would be with it being a house in a residential area, still essentially a house in a residential area was turned into a business that is a similar business, a beauty salon, which is, I believe, the exact same zoning needed for a nail salon. And again, there are some within blocks. There is a beauty salon along with other businesses within blocks of where Ms. Mincy wanted to do it. And therefore, it is arguable that those are similarly enough situated for this instance. Well, did you show the race of these other people? Because since you're making a race discrimination claim, I mean, were these other people African American who got rezoned or were they white or Asian or do we know? Yes. There was a little bit of all of that. In her neighborhood, in particular, there were white people who were rezoned. However, across the city, there were different races who were rezoned. However, it depends on the neighborhood. Where race came into this was really on the neighbor's objections in this particular predominantly white neighborhood. In the context of another neighborhood, the neighbors may not have persuaded the city to do it. Our argument is that the neighbors persuaded the city to make that decision. Part of the neighbor's persuasion was based in arbitrary opinions that were based on race because there was no other reason for the assumptions, no other reason that was substantiated based on the assumptions. Does that view, if you're attributing that view to the neighbors, does that transfer to the city, that motivation? It does because it was admitted, Ms. Hurst admitted that the neighbor's objections, this particular neighbor's objections, were part of her consideration. And so because of that, it does transfer. But she didn't admit that the neighbors were acting based on race, did she? You're saying the reason the neighbors complained, do you think, was that the neighbors were acting based on race? In the nature of the neighbor's complaint, to assume that Nails by Kimmy would increase crime and decrease property values, the content of the neighbor's objection that the city accepted was a racially based content. And therefore, the city adopted a racially based reason as part of their reasoning. And according to the case law, that's all it requires, is that race was part of the reason, part of the consideration for it to be arbitrary. That only works, though, if you buy the argument that those are code words, though, right? Right, right. However, it's our argument that whether they're code words or not is not something for the judge to decide. And in his decision, it even sounded unsure. He said they're not necessarily code words, but he doesn't say that they're necessarily not code words. And so if there is the possibility that those were based on race and that that was a way for somebody to express their opinions about race without expressing it outright, then that's something for a jury to decide whether that's the case. And especially in the context where there were some other things that were apparently race based, the jury has to have the opportunity to weigh those things together to determine whether or not those words were actually a pretext to race. And I'd like to save the rest of the time for rebuttal, if I may. Thank you. You may. Thank you for your argument. Mr. Carpenter, we'll hear from you when you're ready. Judge Collington, and may it please the court, I have to express admiration for Mr. Sprinkle. Two arguments in one day before the same panel is something I have done and it is never fun. The problem with this case is that words are being given meanings to try to make that into a racial allegation, to try to make that to be an improper motive for the passage of legislation. And the problem in this case is that there were 84 undisputed facts provided to the district court in accordance with the local rule. Only two of those were objected to by the plaintiff. One was that this was not done on the basis of race. And they were numbers 31 and 33 in the city's statement of undisputed facts. As to the race basis, it was the code words of lowered property values and crime. And as we pointed out in our briefs, those particular designations are legitimate considerations on whether to grant rezonings in Arkansas as determined under state law by the Arkansas Supreme Court. So in and of itself, we don't see any way to make that leap to that this is a racial classification. But incidentally, it's not just because there was going to be a business there that was a concern about crime as the district court stated in its order. And there is nothing in the record from the plaintiff to dispute this. The concern about crime is because the parking for this to a partial business was going to have to be in a secluded alley. And so the concern about crime is that there's a secluded alley that the customers of Ms. Mincy would have to go into in order to get their cars to leave. Her hours of operation, particularly during the fall and winter months, would make that during the evening. And that is a possibility of crime. I suggest to you that the concern of a member of the board of directors familiar with the crime problems and the location of crime problems within the city of Little Rock can legitimately be concerned about this aspect of it. The lower property values was that this was to be a commercial business placed between two residential properties. And the problem there is not only was that inconsistent with the comprehensive plan and the future development plan that had been developed by the city, it was also inconsistent with a neighborhood action plan that had been developed by the Hillcrest Neighborhood. Now, the Hillcrest Neighborhood developed that plan because it is an historic neighborhood and it's going to lose some of that status if it loses residential stock. And one of the prime products of that plan was not to lose residential stock within that area. So the question... What about the claim that there's a beauty of the second volume of the appendix, there is the affidavit of the planning director, Tony Buzzynski, that points out that the types of businesses that they were complaining about had either been grandfathered in before a zoning decision had been made there, or in terms of the 98 listings that he had before, he went through there in great detail and pointed out why those were not similar in fact, that they were not changes in that type of a situation. But I go back to the unique Hillcrest plan. It's... Take the historic neighborhood in your particular hometowns, efforts are made by cities throughout the country with the approvals of the court to take special actions to try to keep those things in some sort of fashion. That's what that neighborhood plan was. So it wasn't just that there was going to be a business. It was going to be a business located between two residences in an area that wasn't zoned for that, in which the neighborhood had done special actions that had been accepted by the city, although not binding upon the city, to try to decrease and stop any loss of residential properties within that area. More to the point, all of these factors were put forth with exhibits in the city's Statement of Undisputed Facts, and they were not challenged in any way by the plaintiff. Now, summary judgment is a tool so that cases do not go to trial, that there is no genuine issue of material fact. And it's well set up that this is how it could be done. The local rule says, give your Statement of Undisputed Facts. The other side has to come up with something to challenge it. They said, well, the other rezonings were similar, but they gave nothing to challenge that, nor did they challenge the language in Mr. Baczynski's affidavit to the Statement of Undisputed Facts as to why these particular cases they were looking at were not similar. They said that crime was a basis for a racial determination, and yet crime isn't racial. Crime affects all races and all peoples, all ages, and all sexes. And those are the things that a concern about in a residential area are a legitimate concern. The issue here really is, did the plaintiff do anything to challenge the motion for summary judgment and the Statement of Undisputed Facts so that there is some place in the record that suggests this? I heard for the first time about death threats. I have never heard that before. I will admit that I was not the trial lawyer, so I can't tell you what may have been happening at conversations at depositions, but I will tell you the record doesn't have anything about that. What the record has in it is Ms. Mincy making the statement that some of the neighbors didn't seem to try to engage her, didn't seem to look at her. And as the district judge said, you know, there's also a legitimate reason for that. She's suing the area to put a commercial business within their residence, and they don't agree with it. They are in conflict, so they're not going out of their way. The moment the city put forth the evidence that there was no racial basis, particularly under Arkansas law, it was incumbent upon the plaintiff to come forward with something else. They did not do so. As to the substantive due process argument, this court's decisions have made it quite clear that those types of arguments are to be used very seldom, and they have to be something that is totally arbitrary and totally capricious. The city contends that if the reasons that may be given for the denial of a zoning matter are legitimate reasons as found by the state's highest court, then they are not arbitrary and capricious. And the only way that that could be shown is if the plaintiff produced some sort of evidence to show that that was really not even true in the first place. But here's the real problem. Unfortunately, the plaintiff purchased property used for a commercial basis that was zoned residential. Due diligence wasn't done. Evidently, the person that helped her to purchase this property didn't make that clear to her, and then she got into something and she wanted to use it for a purpose it was not zoned to be used for. When she tried to get the zoning, it was denied. And when she tried to take it forward, the board of directors also chose to deny the matter. That's how zoning decisions are made. These need to be decided, and state courts that want to challenge the zoning decisions, they don't need to make a federal court a I will yield back the balance of my time. Very well. Thank you for your argument. Mr. Sprinkle? So the city concedes that if the decision is arbitrary and capricious, or as you said, it is true that courts have held that they don't review zoning decisions if they are based on legitimate reasons. However, the court explicitly says that race is not a legitimate reason. And so it still comes back to whether or not race was a part of that decision. And given the facts of this case, whether race was a part of that decision is something for the jury to decide. It's something for whoever the trier of fact is to decide. It's not appropriate for the summary judgment stage. But the only evidence is the so-called code words, right? That the city did it based on race. Yes. Yes. Well... So what evidence is it that those are actually code words other than your interpretation? Yes. Well, the fact that there can be different interpretations is the reason. The allegation is that they are, that the decisions were based on race is the allegation. And if the words can be interpreted different ways, then that is why, that's what trials are for, is to see what is the correct interpretation. The fact that there's no other reason to believe, and even the argument about the alley, well, if the neighborhood doesn't have crime, then there's no reason to believe that because someone is in an alley that all of a sudden the neighbors are going to start committing crimes against them. Or is it the customers who are going to start committing crimes against the neighbors because they're in the alley? On the surface, it sounds like maybe there's something there, but how do you put something there? How do you make the fact that Nails by Kimmy's customers are parking in an alley, how does that increase crime in a neighborhood that does not have a lot of crime? Either the neighbors are attacking them or they're attacking the neighbors. Without some other reason to get there, the way you get there is through speculation. And what is that speculation based on? It's Ms. Mincy's argument that that speculation is based solely on her race, and there's no other argument as to what it is based on right now. Therefore, that is a question for the trier of fact, and it's improper for a summary judgment at this time. No, I was just going to thank you for your argument if you're finished, but you may wrap up. Yes, so for those reasons, I request that the court overturn the grant of summary judgment. Thank you. Very well. Thank you both for your arguments. The case is submitted, and the court will file an opinion in due course.